UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMPSON WON,

Plaintiff,

v.

WELLS FARGO BANK, N.A., et al.,

Defendants.

Case No. 26-cv-03205-TSH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Re: Dkt. No. 12

## I.    INTRODUCTION

Plaintiff Thompson Won filed suit against Defendants Wells Fargo Bank, N.A. ("Wells"), Newrez LLC dba Shellpoint Mortgage Servicing ("Shellpoint"), and National Default Servicing Corp. ("NDSC") (collectively, "Defendants"), alleging Defendants wrongfully foreclosed on Won's property.  ECF No. 1-1.  Pending before the Court is Shellpoint's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 12 ("Mot.").  The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the June 11, 2026, hearing.  For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[1]

## II.    BACKGROUND

**A.    Factual Background**

Won is the owner of real property, located in San Francisco, California, that is the subject of this dispute (the "Property").  Compl. ¶ 1 (ECF No. 1-1).  Won has occupied the Property as his

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 11-2, 17, 19, 35.

primary residence for more than twenty years. *Id.* ¶ 7. Defendant Wells "is the original lender and lienholder against the Property."[2] *Id.* ¶ 2. Defendant Shellpoint "is allegedly an assignee of the Deed of Trust and a subsequent lienholder."[3] *Id.* ¶ 3. Defendant NDSC "is allegedly a Trustee who caused the foreclosure sale of the Property."[4] *Id.* ¶ 4.

Overall, Won alleges that because Defendants committed misconduct when they conducted a non-judicial foreclosure of his Property, the foreclosure and instruments related to foreclosure are defective. *Id.* ¶¶ 11, 13–14, 17–18, 22, 26–28, 32–33, 44.

### 1.        The Parties' Relationship Concerning The Property

The Property at issue is a residential real estate property located at 7315 Geary Blvd., San Francisco, California. *Id.* ¶ 1. Won owns the Property, has occupied the Property as his primary residence for over twenty years, and currently lives there with his wife and daughter. *Id.* ¶ 7.

Won and his mother, Bao Feng Won, purchased the Property on June 23, 2003.[5] *Id.* ¶ 8. Won and his mother entered into a Deed of Trust ("DOT") with Wells, as lender, and Fidelity National Title Insurance Co., as trustee, where Won and his mother "mortgaged the Property against a note in the amount of $575,000.00." *Id.* Wells recorded the DOT with the San Francisco County Recorder's Office on July 9, 2003. *Id.* The DOT contains a provision titled, "Sale of Note; Change of Loan Servicer; Notice of Grievance," stating:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan

---

[2] Wells, a national bank, has its main office in South Dakota. Not. of Removal ¶ 12 (ECF No. 1).

[3] Shellpoint's citizenship is ultimately traced back to New Residential Investment Corp., a Delaware corporation with its principal place of business in New York. Not. of Removal ¶ 13.

[4] NDSC is an Arizona corporation with its principal place of business in Arizona. Not. of Removal ¶ 14.

[5] Won's mother died in 2012. Compl. ¶ 8.

> Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. . . .
>
> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section : 5) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

*Id.* ¶ 9; *see* Compl., Ex. A ¶ 20 (DOT) (ECF No. 1-1 at 11).  Pursuant to the provision titled, "Notices,"

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. . . . Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.

DOT ¶ 15.  Further, the DOT contains a "Family Rider" that states:  "Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted."  DOT at p. 18.

On April 11, 2025, Wells assigned the DOT rights to Shellpoint and recorded the Assignment of Deed of Trust with the county's recorder office.  Compl. ¶ 11; *see* Compl., Ex. B ("Assignment of DOT") (ECF No. 1-1 at 32).  On August 12, 2025, NDSC recorded a Notice of Default ("NOD") "for an unpaid balance of $65,144.77."  Compl. ¶ 12.  Shellpoint attached a declaration to the NOD regarding the mortgage servicer's due diligence that states:

> The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.5(e) to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

*Id.*; *see* Compl., Ex. C (NOD) (ECF No. 1-1 at 34).  Shellpoint attached the declaration pursuant to California Civil Code § 2923.5(b).  Compl. ¶ 12.

On January 5, 2026, NDSC recorded a Notice of Trustee's Sale ("NOTS") "with a sale date of February 4, 2026, for the unpaid balances and charges of $272,221.33."  *Id.* ¶ 17; *see* Compl., Ex. E (NOTS) (ECF No. 1-1 at 43).  On February 4, 2026, "someone approached [Won]

United States District Court
Northern District of California

at his Property regarding an auction." Compl. ¶ 18. That same day, "NDSC allegedly conducted a foreclosure sale." *Id.*

### 2.    Defendants' Alleged Misconduct

Won alleges the following in the Complaint. Won did not receive any notice from Wells or Shellpoint when Wells assigned the DOT rights to Shellpoint in April 2025. *Id.* ¶ 14. Won "never received or saw" the Assignment of DOT "prior to the foreclosure of his home." *Id.* ¶ 11. Won "never received any calls or correspondence regarding the options to avoid foreclosure as claimed in the declaration attached to the NOD." *Id.* ¶ 13. Won "did not receive the NOTS prior to the foreclosure sale date." *Id.* ¶ 17. And Won did not know about any auction sale of his Property. *Id.* ¶ 18.

After purchasing the Property, Won "created a separate bank account with [Wells] and had an autopay for the mortgage payments via ACH." *Id.* ¶ 10. Around December 18, 2025, Won received a mortgage statement on Shellpoint's letterhead. *Id.* ¶ 14; *see* Compl., Ex. D ("Mortgage Statement") (ECF No. 1-1 at 39). He then reviewed his mortgage account "set up for autopay and noticed that no deduction had been made since April 2025." Compl. ¶ 14. This was the first time Won received anything from Shellpoint about the change in loan ownership or servicing. *Id.* Because Won was "concerned about the mortgage" and had "no knowledge about the transfer/ assignment of the loan or existence of Shellpoint," Won "attempted to contact Shellpoint on multiple occasions in December 2025 and January 2026"; however, these attempts were unsuccessful. *Id.* ¶ 15. Won attempted to call Shellpoint at 800-365-7107 on December 5, 2025, December 8, 2025, and December 23, 2025, "but these calls did not get through." *Id.* ¶ 16. Won then "became suspicious about Shellpoint's legitimacy and concerned about his loan." *Id.* On January 26, 2026, Won again attempted to call Shellpoint "but was unable to connect and never received a call back." *Id.*

Contrary to its declaration attached to the NOD, Shellpoint did not contact Won "prior to issuance and causing to record the NOD." *Id.* ¶ 44. "Had Shellpoint conducted due diligence in contacting [Won] at his residence, [Won] would have became aware about the assignment and existence of Shellpoint." *Id.*

4

Won "had and has the ability to tender and is willing to tender an outstanding amount, subject to equitable damages suffered because of Defendants' misconduct." *Id.* ¶ 19. Won has timely made the mortgage payments since inception of the mortgage in 2003. *Id.* ¶ 44. He is excused from performing his duties under the parties' DOT because he did not know about the Assignment of DOT and "where to make the mortgage payments." *Id.* ¶ 27. Had Won known about the Assignment of DOT, he would have tendered payment to avoid foreclosure. *Id.* ¶ 45.

Because Defendants failed to comply with California Civil Code §§ 2924 et seq., including by failing "to timely provide notices," Defendants' foreclosure is procedurally and substantively defective. *Id.* ¶ 22. Wells and Shellpoint breached the DOT by failing to notify Won about the Assignment of DOT. *Id.* ¶¶ 25–26. And Shellpoint violated California Civil Code § 2923.55 which "requires a mortgage servicer to contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *Id.* ¶¶ 43–47. Because of Defendants' misconduct, Won's "title is superior to that of Defendants to the Property," and Won is entitled to cancellation of the NOD and NOTS. *Id.* ¶¶ 32, 41.

**B.    Procedural Background**

On March 9, 2026, Won filed this action against Defendants Wells, Shellpoint, NDSC, and Does 1–20 in San Francisco County Superior Court, Case No. CGC-26-634770. Not. of Removal, Ex. A ("Compl.") (ECF No. 1-1). Won alleges six causes of action: (1) Wrongful Foreclosure (against all Defendants); (2) Breach of Contract (against all Defendants); (3) Cancellation of Instruments (against all Defendants); (4) Declaratory Relief (Cal. Civ. Pro. Code. § 1060) (against all Defendants); (5) Quiet Title (Cal. Civ. Pro. Code §§ 760.010 et seq.) (against all Defendants); and (6) Violation of Cal. Civ. Code § 2923.55 (against Shellpoint). Compl. ¶¶ 21–47. Won seeks damages, declaratory and injunctive relief, and cancellation and quashing of registered Notice of Default and documents related to the foreclosure sale of the Property. *Id.* at 7–8.

On April 15, 2026, Defendants removed the case to the Northern District of California. ECF No. 1 ("Not. of Removal"). Defendants allege the Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* at 3–5. On April 22, 2026, Wells filed an answer to the

5

Complaint.  ECF No. 9.

On April 22, 2026, Shellpoint filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 12 ("Mot.").  Shellpoint also filed a Request for Judicial Notice.  ECF No. 13.  On May 6, 2026, Won filed an Opposition.  ECF No. 28 ("Opp.").  On May 13, 2026, Shellpoint filed a Reply.  ECF No. 31 ("Reply").

### III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up).  A court "may exercise its discretion to deny leave to amend due to 'undue

6

delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV.    DISCUSSION

Shellpoint moves to dismiss all Won's claims for failing to state a cognizable claim.  Mot. at 1.  In sum, the Court concludes that Won alleges cognizable claims for Wrongful Foreclosure (Claim 1), Breach of Contract (Claim 2), Cancellation of Instruments (Claim 3), Declaratory Relief (Claim 4), and Violation Of California Civil Code § 2923.55 (Claim 6) against Shellpoint. Therefore, dismissal of Claims 1–4 and 6 is not warranted.  However, the Court concludes that Won fails to allege a cognizable claim for Quiet Title (Claim 5) against Shellpoint.  Therefore, dismissal of Claim 5 is warranted.

### A.    Request For Judicial Notice

Shellpoint requests the Court take judicial notice of seven documents:

> 1. Exhibit A:  Exhibit A is a true and correct copy of a Deed of Trust recorded in the Official Records of San Francisco County on July 9, 2003, as Document Number 2003-H480723.
>
> 2. Exhibit B:  Exhibit B is an Assignment of Deed of Trust recorded in the Official Records of San Francisco County on April 11, 2025, as Document Number 2025026827.
>
> 3. Exhibit C:  Exhibit C is a Notice of Default and Election to Sell Under Deed of Trust recorded in the Official Records of San Francisco County on August 12, 2025, as Document Number 2025066238.

4. Exhibit D:  Exhibit D is a Notice of Trustee's Sale recorded in the Official Records of San Francisco County on January 5, 2026, as Document Number 2026000407.

5. Exhibit E:  Exhibit E is a true and correct copy of the Ex Parte Application filed by Plaintiff in the San Francisco County Superior Court on March 26, 2026, Case Number CGC-26-634770.

6. Exhibit F is a true and correct copy of the Notice of Entry of Order denying the Ex Parte and setting an Order to Show Cause re Preliminary Injunction Hearing, filed by Plaintiff in the San Francisco County Superior Court on March 26, 2026, Case Number CGC-26-634770.

7. Exhibit G is a true and correct copy of the Opposition to the Order to Show Cause re Preliminary Injunction, filed by Shellpoint in the San Francisco County Superior Court on March 26, 2026, Case Number CGC-26- 634770.

ECF No. 13.  Won does not respond to Shellpoint's request.  *See generally* Opp.

Normally, when adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the Court's consideration of extra-pleading materials is limited and matters outside of the pleading cannot be considered without converting the motion into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b)(6), 12(d).  However, there are two exceptions—the incorporation-by-reference doctrine and judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Under the Federal Rules of Evidence, the Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

"Certain written instruments attached to pleadings may be considered part of the pleading." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)).  Under the doctrine of incorporation-by-reference, the Court may consider a document not attached to the complaint provided the complaint "necessarily relies" on the document or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

8

United States District Court
Northern District of California

claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Here, Shellpoint's Exhibits A, B, C, and D are the DOT, Assignment of DOT, NOD, and NOTS—the same documents attached to Won's Complaint. *Compare* ECF No. 13, Exs. A (ECF No. 13-1), B (ECF No. 13-2), C (ECF No. 13-3), D (ECF No. 13-4) *with* Compl., Exs. A, B, C, E. The Court will not take judicial notice of Shellpoint's Exhibits A–D because these documents are attached to the Complaint and are part of that pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Shellpoint's Exhibits E and F are documents that were filed on the state court docket prior to removal. *See* ECF No. 13, Exs. E (ECF No. 13-5), F (ECF No. 13-6). While a court may take judicial notice of the existence of unrelated court documents, it cannot "take judicial notice of such documents for the truth of the matter asserted therein." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010). The Court therefore will take judicial notice of the existence of Exhibits E and F but not of any facts asserted within those documents. Shellpoint does not attach any document as Exhibit G, which is supposed to be another document filed in state court. ECF No. 13. The Court thus cannot take judicial notice of Exhibit G. However, because the Court would not take judicial notice of any facts within Exhibit G, Shellpoint's oversight does not impact the Court's disposition of its Motion.

**B.     Wrongful Foreclosure Claim (Claim 1)**

Won alleges that the foreclosure of his Property is procedurally and substantively defective because Defendants failed to comply with statutory provisions under the California Homeowner Bill of Rights ("HBOR"). Compl. ¶¶ 21–23, 42–47. Shellpoint argues that Won's Wrongful Foreclosure claim fails because (1) the HBOR "is inapplicable to this matter"; and (2) Won fails to sufficiently plead essential elements of his claim.[6] Mot. at 1:16–28, 5:22–8:4.

[6] Shellpoint also makes a cursory argument that this claim cannot proceed because "the third-party purchaser has not been named in the Complaint," and he is an indispensable party. Mot. at 7:12– 8:1; Reply at 7:20–25. However, Shellpoint brings its Motion under Rule 12(b)(6) which is not the proper vehicle to challenge a failure to join a party. *See Gross Belsky Alonso LLP v. Henry*

"A deed of trust to real property acting as security for a loan typically has three parties: the trustor (borrower), the beneficiary (lender), and the trustee. The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale." *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 926 (2016) (cleaned up). In California, the "trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell." *Id.* at 927 (citing Cal. Civ. Code § 2924(a)(1)). After

> a three-month waiting period, and at least 20 days before the scheduled sale, the trustee may publish, post, and record a notice of sale. If the sale is not postponed and the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder.

*Id.* (cleaned up).

Under California law, a wrongful foreclosure claim is "an equitable action to set aside a foreclosure sale, or an action for damages resulting from the sale, on the basis that the foreclosure was improper." *Sciarratta v. U.S. Bank Nat'l Assn.*, 247 Cal. App. 4th 552, 561 (2016). "The elements of a wrongful foreclosure cause of action are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Id.* at 561–62 (cleaned up). "Mere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been entirely unauthorized on the facts of the case." *Id.* at 562 (cleaned up).

Here, the Court concludes that Won alleges a cognizable Wrongful Foreclosure claim against Shellpoint premised on Shellpoint's violations of the HBOR.

Accordingly, the Court **DENIES** Shellpoint's motion to dismiss Won's Wrongful

---

*Edelson*, No. C-08-4666-SBA, 2009 WL 1505284, at *5 (N.D. Cal. May 27, 2009) ("A defendant may bring a motion to dismiss under Rule 12(b)(7) for failure to join a indispensible [*sic*] party under Rule 19."). Nor does Shellpoint discuss how Rule 19 applies. *See* Fed. R. Civ. P. 12(b)(7) (stating party may assert defense of "failure to join a party under Rule 19" by motion). The Court therefore declines to reach this argument.

Foreclosure claim against Shellpoint.

### 1. California Homeowner Bill Of Rights

"The California Homeowner Bill of Rights ('HBOR') is a state law designed to both provide protections for homeowners facing non-judicial foreclosure and reform aspects of the foreclosure process which took effect on January 1, 2013." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1087 (N.D. Cal. 2015) (cleaned up). The purpose of the HBOR is "to ensure that as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." *Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 295 (2022) (cleaned up).

The HBOR states:

> (a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924 and Sections 2923.5, 2923.55 . . . shall apply only to a first lien mortgage or deed of trust that is secured by owner-occupied residential real property containing no more than four dwelling units.
>
> (b) For purposes of this section, 'owner-occupied' means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

Cal. Civ. Code § 2924.15. The law is clear that a plaintiff must allege that the subject property is owner-occupied as their principal residence. *Greene v. Wells Fargo Bank, N.A.*, No. 15-cv-00048-JSW, 2016 WL 360756, at *2 (N.D. Cal. Jan. 28, 2016).

Here, Won's Wrongful Foreclosure claim is based on two violations of the HBOR—California Civil Code sections 2924 and 2923.55—for Defendants' failure to provide him with timely notices related to the foreclosure of his Property. Compl. ¶¶ 21–23, 42–47. Shellpoint argues that Won's claim cannot rely on violations of the HBOR because the HBOR does not apply as the Property is not owner-occupied and the loan "was not for personal, family, or household purposes." Mot. at 4:7–28, 6:19–24. Won contends that Shellpoint's "argument raises factual disputes that cannot be resolved on a motion to dismiss." Opp. at 4:14–25.

The Court concludes that Won demonstrates that the HBOR applies in this case. First, the Court concludes that Won alleges sufficient facts to plausibly demonstrate that the Property is and

United States District Court
Northern District of California

11

United States District Court
Northern District of California

has been owner-occupied.  Won's allegations that he owns the Property, has occupied the Property as his primary residence for over twenty years, currently lives there with his wife and daughter, and has been available there to receive communications regarding the DOT and foreclosure support that the Property was owner-occupied at all times relevant to this action.  Compl. ¶¶ 1, 7, 44; *see* Opp. at 4:14–25; *cf. Warren v. PNC Bank Nat'l Ass'n*, 671 F. Supp. 3d 1035, 1042–43 (N.D. Cal. 2023) (concluding plaintiff's allegations that property is his primary residence and that he "lived at the property for years prior to foreclosure and when the notice of default was issued" "plausibly supports that the property was 'owner-occupied'").  Shellpoint asserts that the Property "was not owner-occupied according to the loan documents provided by [Won], which reflect a different mailing address."  Mot. at 4:26–28.  But a mailing address is just that—a place to receive mail.  It does not mean that Won's mailing address is his primary residence.  And Shellpoint's argument that the HBOR does not apply to Won's loan because "the parties removed the requirement in the Deed of Trust mandating that the borrower live in the Property as his primary residence" likewise fails.  Reply at 4:1–15.  That Won negotiated provisions in the DOT has no bearing on his allegations in the Complaint, which are controlling at the pleadings stage.

Second, Shellpoint cites no authority for its proposition that Won must specifically allege that his loan was "for personal, family, or household purposes."  Mot. at 4:24–28; Reply at 3:15–26.  This phrase is subsumed in the definition of "owner-occupied" which Won's allegations establish.  *See* Cal. Civ. Code § 2924.15.  Put another way, a reasonable inference exists that a loan taken out on real estate that is the borrower's principal residence is "a loan made for personal, family, or household purposes."  *Id.*

As discussed below, the Court concludes that Won alleges a plausible claim against Shellpoint for violations of the HBOR (Cal. Civ. Code § 2923.55).  *See infra*, Part IV.G.  Therefore, Won may allege a Wrongful Foreclosure claim against Shellpoint premised on Shellpoint's violations of the HBOR.

### 2.    Sufficiency Of Claim

Shellpoint argues that Won does not sufficiently allege the elements of prejudice and tender.  Mot. at 6:25–7:11; Reply at 2:11–14, 6:23–7:27.  Won contends that his allegations

support that Defendants' "statutory violations materially contributed to the foreclosure outcome rather than any valid, properly conducted default process." Opp. at 5:8–6:5.

Under California law, "[t]o successfully challenge a foreclosure sale based on a procedural irregularity, the plaintiff must show both that there was a failure to comply with the procedural requirements for the foreclosure sale *and* that the irregularity prejudiced the plaintiff." *Citrus El Dorado, LLC v. Chicago Title Co.*, 32 Cal. App. 5th 943, 950 (2019) (emphasis in original). Prejudice is shown when the defendant's conduct is the cause-in-fact of the homeowner's injury. *Sciarratta*, 247 Cal. App. 4th at 565–66. "The critical issue is not the plaintiff's ability to pay, but rather whether the defendant's conduct resulted in the plaintiff's harm[.]" *Id.* at 566.

Further, "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984). "The tender rule applies to equitable claims, such as claims to set aside a trustee's sale, to quiet title, to cancel an instrument, or for wrongful foreclosure." *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 870 (N.D. Cal. 2015) (citing *Arnolds*, 158 Cal. App. 3d at 578–79). However, there are several equitable exceptions to the tender rule. *See Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112–14 (2011) (discussing exceptions). For example, "a tender may not be required if it would be inequitable to impose such a condition on the party challenging the sale." *Turner v. Seterus, Inc.*, 27 Cal. App. 5th 516, 526 (2018) (cleaned up). As such, "because tender is an equitable concept, courts have held that whether Plaintiffs are required to tender is a matter of discretion left up to the Court, and that failure to allege tender is not decisive at the pleading stage." *Green*, 148 F. Supp. 3d at 870 (cleaned up).

Here, the Court concludes that Won plausibly alleges that Shellpoint's violations of the HBOR prejudiced him. Won alleges that Shellpoint did not contact him about foreclosure of his Property, recorded an NOD with a declaration that falsely states Shellpoint used diligence to contact Won, and that Won would have cured any default had he known about the NOD. Compl. ¶¶ 12–13, 44–45; *see* Opp. at 5:8–6:5. Taking these allegations as true, Shellpoint's failure to notify Won of impending foreclosure, followed by its subsequent declaration to the contrary,

13

caused Won's injury of losing his legal right to cure default to avoid foreclosure; this is sufficient to show prejudice. *Sciarratta*, 247 Cal. App. 4th at 565–66.

The Court also concludes that Won alleges sufficient facts to demonstrate that he meets the tender element because he "was excused from tendering." *Id.* at 561–62. Shellpoint complains that Won fails to show that "he satisfied the tender requirement, as simply stating he is able to tender is insufficient." Reply at 2:11–14. But Won "alleges he was prevented from curing the default due to lack of notice and inability to contact the servicer." Opp. at 8:1–3; *see* Compl. ¶¶ 14, 19, 27, 45. Because Won alleges that but for Shellpoint's failure to notify him about foreclosure and subsequent false declaration that moved the foreclosure process forward, he would have cured any default and thus avoided foreclosure, the tender rule does not bar Won's claim. *Cf. Turner*, 27 Cal. App. 5th at 528–31 (holding tender rule did not bar plaintiffs' wrongful foreclosure claim where plaintiffs alleged they would have cured the default but for lender's improper act of refusing to accept tender).

Moreover, Shellpoint's argument that an evidentiary presumption applies is premature. Shellpoint asserts that a conclusive presumption exists that the sale of the Property was valid. Mot. at 7:12–8:1; Reply at 3:15–26. But "[e]ven though the validity of the sale is conclusively presumed as against a bona fide purchaser so long as the deed recites the necessary formalities, the presumption is rebuttable in a postforeclosure case against the trustee or mortgagee upon a showing that the trustee's sale was procedurally irregular." *Morris*, 78 Cal. App. 5th at 294. Therefore, Won's Wrongful Foreclosure claim survives dismissal.

## C.    Breach Of Contract Claim (Claim 2)

Won alleges that Defendants breached the DOT by failing to notify Won about the Assignment of DOT. Compl. ¶¶ 24–29. Shellpoint argues that Won's Breach of Contract claim fails because Won (1) breached first; (2) does not show "how any purported breach by Shellpoint caused the foreclosure"; and (3) "failed to provide notice of the breach to Shellpoint and provide time to cure the same." Mot. at 8:5–10:5. Won contends that his allegations show that Defendants "failed to perform obligations under the contract and that such failure contributed to the alleged default and resulting foreclosure." Opp. at 6:6–17.

14

United States District Court
Northern District of California

Under California law, a plaintiff must plead four elements for a breach of contract claim: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "Implicit in the element of damage is that the defendant's breach *caused* the plaintiff's damage." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352 (2009) (emphasis in original). Whether a party breached a contract is a question of fact. *Locke v. Warner Bros.*, 57 Cal. App. 4th 354, 365 (1997).

Here, the Court concludes that Won alleges a cognizable Breach of Contract claim against Shellpoint. First, Shellpoint asserts that Won breached the DOT first because the NOD states that Won "was due for the January 2025 payment, as of August 11, 2025," but the "assignment to Shellpoint did not occur until April 2025." Mot. at 8:19–26; Reply at 5:20–6:2. But Won alleges that he timely made the mortgage payments through autopay since inception of the mortgage in 2003, and that payments were deducted through April 2025. Compl. ¶¶ 10, 14, 44. Moreover, Won alleges that he is excused from missing any payments after this date because his automatic payments were disrupted without notice and he was not told where to make payments. *Id.* ¶¶ 14, 19, 27, 45; *see* Opp. at 6:15–17. In short, Won's allegations demonstrate that any breach for missed payments occurred after Shellpoint's breach in April 2025 and that he is excused from performing under the DOT.

Second, contrary to Shellpoint's assertion, the Court concludes that Won alleges sufficient facts to show that Shellpoint's breach caused the foreclosure. Mot. at 8:27–9:2; Reply at 6:3–13. Won alleges that Shellpoint did not notify him of the Assignment of DOT, did not tell him where to send mortgage payments, and that Won would have tendered payment to avoid foreclosure had he known about the assignment. Compl. ¶¶ 11, 14, 27, 45; *see* Opp. at 6:8–14. Taking these allegations as true, foreclosure of the Property would not have occurred but for Shellpoint's failure to notify Won of the Assignment of DOT.

Finally, Shellpoint asserts that pursuant to the DOT's "notice and cure" provision, the DOT requires Won to notify Shellpoint of its breach prior to commencing litigation. Mot. at 9:3–10:2; Reply at 6:14–22. According to Shellpoint, Won's claim is barred because he did not

comply with this provision. *Id.* But that makes no sense. Won alleges that he entered into the DOT with Wells as a lender, that Wells assigned the DOT rights to Shellpoint, and that no one notified him that Shellpoint was the new lienholder pursuant to an assignment. Compl. ¶¶ 8, 11, 14. So how could Won notify Shellpoint of its breach (failure to notify Won that Shellpoint was the new lienholder) if Won was not aware of Shellpoint's involvement in his mortgage or its contact information?

Accordingly, the Court **DENIES** Shellpoint's motion to dismiss Won's Breach of Contract claim against Shellpoint.

### D.    Cancellation Of Instruments Claim (Claim 3)

Won alleges that the NOD and NOTS are subject to cancellation because they are facially invalid. Compl. ¶¶ 30–35. Shellpoint argues that Won's Cancellation of Instruments claim fails because Won does not sufficiently allege that (1) the NOD and NOTS are void; and (2) he tendered "the outstanding indebtedness to reinstate or satisfy the loan." Mot. at 10:6–11:5. Won contends that because he sufficiently pleads "defects in the foreclosure process," cancellation "is an available remedy." Opp. at 6:18–7:20.

Under California law, a court may order the cancellation of a written instrument "in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." Cal. Civ. Code § 3412. The elements of a claim to cancel an instrument are: (1) an instrument that "is void or voidable due to, for example, fraud"; and (2) "a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of one's position." *U.S. Bank Nat'l Assn. v. Naifeh*, 1 Cal. App. 5th 767, 778 (2016).

"A void contract is without legal effect." *Yvanova*, 62 Cal. 4th at 929. "A voidable transaction, in contrast, is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." *Id.* at 930.

Here, the Court concludes that Won alleges a cognizable Cancellation of Instruments claim against Shellpoint. First, the Court concludes that Won's allegations—that the NOD and NOTS run contrary to California law because Shellpoint's declaration of compliance attached to the NOD

United States District Court
Northern District of California

falsely states that Shellpoint contacted Won prior to issuing the NOD, and the NOTS is contingent upon the fraudulent NOD—are sufficient to show that the NOD and NOTS are void or voidable. Compl. ¶¶ 11–12, 17, 44; *cf. Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 950 (S.D. Cal. 2020) (concluding plaintiffs' allegations that NOD and NOTS "were executed and recorded fraudulently and caused Plaintiffs serious injury" and that "recorded documents are facially invalid" were sufficient to show instruments were void, or at least voidable).  Second, as discussed, Won's allegations are sufficient at the pleadings stage to show that he is excused from any tender requirement.  *See supra*, Part IV.B.2.

Accordingly, the Court **DENIES** Shellpoint's motion to dismiss Won's Cancellation of Instruments claim against Shellpoint.

### E.    Declaratory Relief Claim (Claim 4)

Won alleges that an "actual controversy exists between the parties concerning the compliance with conditions of DOT and proceedings with the foreclosure sale."  Compl. ¶¶ 36–38. Won requests a "judicial declaration that the NOD and NOTS be cancelled and the illegal foreclosure is set aside."  *Id.*  Shellpoint argues that Won's Declaratory Relief claim fails because (1) no actual controversy exists; and (2) the claim is duplicative of other causes of action.  Mot. at 11:6–12:5.  Won contends that the claim (1) presents a live controversy surrounding the Property; and (2) may proceed alongside the underlying substantive claims which are adequately pleaded. Opp. at 6:18–7:20.

Won brings this claim under California's Declaratory Relief Act which permits a party to "ask the court for a declaration of rights or duties" and the court to "make a binding declaration of these rights."  *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 897 (2002); *see generally* Cal. Civ. Proc. Code § 1060.  However, because declaratory relief is procedural in nature, the federal Declaratory Judgment Act governs in this diversity case, not the California Declaratory Relief Act. *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014); *see Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-cv-04587 LB, 2015 WL 1968114, at *20–22 (N.D. Cal. May 1, 2015) (concluding "that the federal Declaratory Judgment Act applies in this action").

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy

17

within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Act only covers cases of actual controversy that are "definite and concrete, touching the legal relations of parties having adverse legal interests, real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up).

Here, the Court concludes that Won alleges a cognizable Declaratory Judgment claim against Shellpoint.  First, Shellpoint argues that no controversy exists because it "fully complied with the contractual requirements" of the DOT and foreclosure sale proceedings.  Mot. at 12:1–5.  But this is disputed.  While Shellpoint asserts full compliance, Won alleges the opposite—that Shellpoint failed to notify him of the Assignment of DOT as required by the DOT, and failed to notify him prior to issuing the NOD despite a declaration indicating Shellpoint's compliance with the HBOR.  Compl. ¶¶ 11, 13–14, 17, 44.  Thus, based on the facts alleged, an actual controversy exists between parties having adverse legal interests regarding whether Shellpoint complied with the terms of the DOT and California law governing foreclosures.  *MedImmune*, 549 U.S. at 127.

Second, Shellpoint argues that the claim is unnecessary because an adequate remedy exists under Won's other causes of action.  Mot. at 11:18–26; Reply at 8:13–9:4.  Even if true, the Court has discretion to hear Won's claim.  *See MedImmune*, 549 U.S. at 136 (explaining Act "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants") (cleaned up).  The Court exercises this discretion as it is too early to determine whether declaratory relief is not appropriate.  *Cf. Guccione*, 2015 WL 1968114, at *22 (exercising discretion to hear Declaratory Judgment Act claim in face of defendant's argument that issues raised in that claim can be decided with respect to plaintiffs' other claims); *Wolf v. Wells Fargo Bank, N.A.*, No. C11-01337-WHA, 2011 WL 4831208, at *10 (N.D. Cal. Oct. 12, 2011) ("Until plaintiff's claims are finally determined, it is impossible for this order to say that declaratory relief will not be in order.").

Accordingly, the Court **DENIES** Shellpoint's motion to dismiss Won's Declaratory Relief

United States District Court
Northern District of California

18

claim against Shellpoint.

**F.      Quiet Title Claim (Claim 5)**

Won alleges that due to Defendants' misconduct, his "title is superior to that of Defendants to the Property." Compl. ¶¶ 39–41. Shellpoint argues that Won's Quiet Title claim fails on both procedural and substantive grounds. Mot. at 12:6–13:19. Won contends that he alleges a cognizable claim based on his "superior interest" in the Property and the invalidity "of the foreclosure process that purportedly divested him of title." Opp. at 7:21–8:3.

Under California law, a plaintiff may bring an action "to establish title against adverse claims to real or personal property or any interest therein." Cal. Civ. Pro. Code § 760.020. To bring a quiet title claim, a plaintiff must file a verified complaint that pleads five elements: (1) the property's "legal description and its street address or common designation, if any"; (2) the plaintiff's title "and the basis of the title"; (3) the "adverse claims to the title"; (4) the "date as of which the determination is sought"; and (5) a "prayer for the determination of the title of the plaintiff against the adverse claims." *Id.* at § 761.020.

Here, the Court concludes that Won fails to allege a cognizable Quiet Title claim against Shellpoint. Shellpoint argues that Won cannot assert a claim for quiet title because the foreclosure auction occurred. Mot. at 12:21–13:2; *see also* Reply at 9:11–22 ("[A] Wrongful Foreclosure claim is the correct way to challenge the foreclosure."). The Court agrees. Without any supporting authority, Won contends that "[i]f the foreclosure is alleged to be defective, quiet title may proceed as part of the remedy structure." Opp. at 7:25–27. But "[o]nce the property has been sold in a foreclosure sale, quiet title is not a viable claim to undo the foreclosure because claim to title has already been extinguished and there is no adverse claim to the property." *Santana*, 495 F. Supp. 3d at 949 (cleaned up); *see West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 802–03 (2013) (holding plaintiff failed to state quiet title claim against lender where foreclosure sale was completed because lender no longer had adverse claim to title).

Accordingly, the Court **GRANTS** Shellpoint's motion to dismiss Won's Quiet Title claim against Shellpoint without leave to amend.

United States District Court
Northern District of California

19

**G.      Violation Of California Civil Code § 2923.55 Claim (Claim 6)**

Won alleges that Shellpoint violated California Civil Code § 2923.55 of the HBOR.[7] Compl. ¶¶ 42–47.  Shellpoint argues that Won's HBOR claim fails because (1) the HBOR "is inapplicable to this matter"; (2) Won makes a conclusory allegation "that the statement of compliance is false"; and (3) Won does not allege a material violation.  Mot. at 1:16–28, 4:9–5:21.

Under the HBOR, a mortgage servicer "shall not record a notice of default pursuant to Section 2924 until" several requirements are met.  Cal. Civ. Code. § 2923.55.  The mortgage servicer

> shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.  During the initial contact, the mortgage servicer shall advise the borrower that the borrower has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days.  The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.  In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

*Id.* at § 2923.55(b)(2)(A).  A notice of default

> recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5.

*Id.* at § 2923.55(c).  "A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b), provided that the failure to contact the borrower occurred despite the due diligence of the

---

[7] "Section 2923.5 applies to entities with more than 175 foreclosures in a reporting period, while section 2923.55 applies to entities with fewer than 175 foreclosures in a reporting period, though they are substantively similar." *Hernandez v. Shellpoint Mortg. Servicing*, No. 5:25-cv-03431-AH-MARX, 2026 WL 712991, at *2 n.3 (C.D. Cal. Feb. 5, 2026); *see Santana*, 495 F. Supp. 3d at 939 n.6 (citing Cal. Civ. Code § 2924.18(c)).  Here, the parties refer to both section 2923.5 and section 2923.55, and the NOD includes a declaration of compliance pursuant to section 2923.5. *See* Compl. ¶¶ 12, 42–47, Ex. C; Mot. at 1. The Court addresses the claim under section 2923.55, as alleged in Won's Complaint under the specific cause of action. *Cf. Hernandez*, 2026 WL 712991, at *2 n.3

United States District Court
Northern District of California

mortgage servicer." *Id.* at § 2923.55(f). For purposes of this section, "due diligence" requires the mortgage servicer to take several actions, including contacting the borrower by letter, "by telephone at least three times at different hours and on different days," and by certified mail, with return receipt requested. *Id.*

Further, a plaintiff may obtain relief under the HBOR for "a material violation of Section 2923.55." *Id.* at § 2924.12. "A material violation is one that affected the borrower's loan obligations, disrupted the borrower's loan-modification process, or otherwise harmed the borrower." *Morris*, 78 Cal. App. 5th at 304 (citation omitted). For materiality, the question at the pleadings stage is "whether the alleged violation undermined the overall purpose of the HBOR." *Id.* at 304–05.

Here, the Court concludes that Won alleges a cognizable claim against Shellpoint for violation of California Civil Code § 2923.55. First, as discussed, the Court rejects Shellpoint's argument that the HBOR does not apply. *See supra*, Part IV.B.1; Opp. at 4:14–25.

Second, the Court concludes that Won alleges sufficient facts to plausibly demonstrate that Shellpoint's declaration of compliance is false. Shellpoint argues that Won's allegations amount to a "bald assertion that the statement of compliance is false." Mot. at 5:1–7; Reply at 4:22–5:8. Not so. Won alleges that he "never received any calls or correspondence regarding the options to avoid foreclosure as claimed in the declaration attached to the NOD"; he "did not receive the NOTS prior to the foreclosure sale date"; and Shellpoint did not contact him at his residence "prior to issuance and causing to record the NOD." Compl. ¶¶ 13, 17, 44; *see* Opp. at 4:26–5:3. To that end, Shellpoint's assertion that Won merely alleges, without explanation, that Shellpoint did not contact him is disingenuous. Reply at 5:3–8. Indeed, Won's allegations are exactly the type that courts have found demonstrate a cognizable claim under Section 2923.55. *Cf. Hernandez*, 2026 WL 712991, at *3 ("On a motion to dismiss, Plaintiffs' allegation that they 'received no mail or messages' from Defendants suffices to plausibly allege a claim."); *Warren*, 671 F. Supp. 3d at 1045 ("Warren has plausibly alleged that he never heard from PNC at any point before foreclosure."). And courts have rejected Shellpoint's argument that a declaration of compliance somehow conclusively establishes that contact with a borrower occurred. Reply at 4:22–5:8; *see*

21

*Santana*, 495 F. Supp. 3d at 939 ("Defendants' reliance on the section 2923.55 declaration filed with the NOD is misplaced. On a motion to dismiss, the Court does not resolve issues of fact but looks at whether the complaint alleges facts to state a plausible claim.").

Finally, the Court concludes that Won alleges sufficient facts to show that Shellpoint's violation of Section 2923.55 was material. Shellpoint argues that Won cannot allege a material violation by Shellpoint because Won "knew how to make payment and simply chose not to, and as a result, there was no impact on his loan or loss mitigation." Mot. at 5:8–21; Reply at 5:9–17. But Won alleges that he was not told about the assignment to Shellpoint, was "suspicious about Shellpoint's legitimacy" when he could not reach them, did not know where to send mortgage payments, was not notified that his Property was subject to foreclosure, and would have tendered payment to avoid foreclosure. Compl. ¶¶ 11, 13–17, 27, 44–45; *see* Opp. at 5:4–7. Shellpoint cannot rewrite Won's allegations. Because Won's allegations show that Shellpoint's actions deprived him of a meaningful opportunity to cure any default—a core purpose of the HBOR—he sufficiently alleges materiality. *Morris*, 78 Cal. App. 5th at 304–05.

Accordingly, the Court **DENIES** Shellpoint's motion to dismiss Won's Violation of California Civil Code § 2923.55 claim against Shellpoint.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Shellpoint's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: June 1, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

22